LEONA ROBERTS OTTOFY, Respondent, v. MISSISSIPPI VALLEY TRUST COMPANY, Administrator, Appellant.

St. Louis Court of Appeals. Argued and Submitted May 15, 1917. Opinion Filed June 6, 1917.

1. **AUTOMOBILES: Injury to Pedestrian: Variance.** In an action for injuries to a pedestrian by being struck by an automobile, *held* that there was not a fatal variance between an allegation of the petition, that plaintiff was injured while on the sidewalk, and proof that she was injured while crossing a street and just when she reached the curb.

2. **PLEADING: Variance: Manner of Raising Objection.** An objection that there is a variance between the allegations of the petition and the proof must be made when the evidence is offered and the objector must also make the required affidavit of surprise. [See Sec. 1846, R. S. 1909.]

3. **EVIDENCE: Opinion Evidence: Speed of Automobile.** In an action for injuries to a pedestrian by being struck by an automobile, *held* that plaintiff, who was examined on her *voir dire* by counsel for defendant, was qualified to testify concerning the speed of the automobile.

4. ——: ——: **Speed of Vehicle.** The fact that a witness saw a vehicle for only an instant does not disqualify him from testifying as to its speed; the weight of such testimony being for the jury.

5. **TRIAL PRACTICE: Reception of Evidence: Effect of Failure to Object.** In an action for injuries to a pedestrian by being struck by an automobile, where no objection was made and no exception was saved to the testimony of a witness who testified concerning the speed of the automobile before it struck plaintiff, such testimony stood before the jury for whatever probative force they chose to give it.

6. **AUTOMOBILES: Injury to Pedestrian: Sufficiency of Evidence.** In an action for injuries to a pedestrian by being struck by an auto-mobile, evidence that plaintiff, in endeavoring to cross the street, from the north to the south side, passed in front of an east-bound street car, which had stopped on the south side of the street, that, when she got to a point two or three feet south of the street car, she saw defendant's automobile, east-bound, at the rear of the car, and traveling between it and the curb, at the rate of twenty-five miles per hour, that she then started to run to the south curb, a distance of from fifteen to twenty-five feet, and that the auto-mobile struck her just as she reached the curb, *held* to make a case for the jury.

7. ———: ———: **Instructions: Variance: Amendment of Petition.** In such case, where the petition alleged that plaintiff was in-jured while lawfully on the sidewalk, an instruction to find for plaintiff if the jury found she was traveling over, upon or across a public street at the time mentioned in the evidence, was not a material variance; and whatever there is in the point can be over-come by amendment of the petition, if counsel are so advised.

8. **APPELLATE PRACTICE: Instructions: Variance: Necessity of Ob-jecting to Evidence at Trial.** An instruction which authorizes a verdict on evidence irrelevant to the pleadings will not be held reversible error, where the evidence was introduced without ob-jection, and the party objecting to the instruction did not pursue the course provided by the statute.

9. **AUTOMOBILES: Injury to Pedestrian: Instructions: Variance.** In an action for injuries to a pedestrian by being struck by an auto-mobile, *held* that an instruction given for plaintiff, that a pedes-trian has the same right to use the street as the owner of a vehi-cle and is not restricted to crossing only at a crossing, but may lawfully cross at any part of the street, using such care as per-sons of like age and of ordinary prudence and caution would use under the same or similar circumstances, did not broaden the is-sues under the allegations of the petition, setting forth that plain-tiff was injured while she was lawfully on the sidewalk; *held, fur-ther*, that the only objection to which the instruction was sub-ject was that possibly it merely contained a statement of a legal proposition, without applying such proposition concretely.

10. ———: ———: **Pleading: Last Chance Doctrine: Sufficiency of Pe-tition.** In an action for injuries to a pedestrian by being struck by an automobile, *held* that the petition, which alleged that de-fendant, "without using care or diligence to lessen the speed of said automobile after seeing the peril in which plaintiff then was, and, after discovering same, permitted and caused said automobile to run upon and over the curb and sidewalk . . . upon which plaintiff then was, and caused said automobile to collide with and

strike plaintiff," to her injury and damage, counted upon the "humanitarian doctrine," although not very clearly and distinctly.

11. ———: ———: **Degree of Care: Last Chance Doctrine: Statute Construed.** Under Sec. 9 of Acts of 1911, page 330, requiring the operator of an automobile to use the highest degree of care that a very careful person would use under like or similar circumstances to prevent injury to person traveling over or across streets, etc., and that any person failing to use such degree of care shall be liable in damages, etc., unless the death or injury is caused by the negligence of the injured or deceased person contributing thereto, the operator of an automobile is required to exercise the "highest degree of care" to prevent injury, under the humanitarian or last chance doctrine, although the injured person was guilty of prior contributory negligence; the proviso to said section meaning that there can be no recovery when the injury was *caused* by plaintiff's negligence, but not denying a recovery, under the humanitarian or last chance doctrine, where, after plaintiff had negligently placed himself in a position of peril, the operator, by exercising the "highest degree of care," could have prevented the injury—plaintiff's prior negligence not being considered the proximate cause of his injury, under these circumstances.

12. ———: ———: **Contributory Negligence: Instructions: Submitting Hypotheses Not Supported by Evidence.** In an action for injuries to a pedestrian by being struck by an automobile, where there was no evidence that plaintiff was standing in front of a street car nor that it was bearing down upon her, nor that, in order to avoid the car, she ran directly in front of defendant's automobile, an instruction that, unless the jury found that plaintiff started to cross the street without stopping and looking to see whether she could cross in safety, and unless the street car in front of which she was crossing was bearing down upon her, and to avoid the car she ran directly in front of defendant's automobile, she was not guilty of contributory negligence, was erroneous, as not being supported by the evidence and as excluding from the jury all evidence of contributory negligence other than that referred to therein.

13. **INSTRUCTIONS: Necessity of Supporting Evidence.** An instruction which submits hypotheses not warranted by the evidence is erroneous.

14. **NEGLIGENCE: Contributory Negligence: Instructions.** An instruction in a negligence case, charging that plaintiff was not guilty of contributory negligence, if certain facts be found to exist, is erroneous, where other facts in evidence that are not submitted would warrant a finding that plaintiff was guilty of contributory negligence.

15. **DAMAGES: Instructions: Submitting Elements not Supported by Evidence.** An instruction on the measure of damages, in an action

for personal injuries, allowing a recovery for "impairment of health, if any, which plaintiff has sustained or will hereafter, with reasonable certainty, sustain, by reason of said injuries and directly caused thereby," was erroneous, where there was no evidence of any impairment of health; but such error is not held to be reversible error.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillan,* Judge.

REVERSED AND REMANDED.

*Buder & Buder* for appellant; *A. H. Roudebush,* of counsel.

(1) The demurrer to the evidence at the close of plaintiff's case, as also at the close of the entire case, should have been sustained because plaintiff failed to make out a prima-facie case on any of her theories of negligence, and the defense failed to aid the same. Winter v. Van Blarcom, 258 Mo. 418; Barnard v. Metropolitan St. Ry. Co., 137 Mo. App. 684; Curley v. Baldwin (R. I.), 90 Atl. 1; Grout v. Electric Ry. Co., 125 Mo. App. 552; Hyde v. Hubinger (Conn.), 87 Atl. 790; Jordan v. American Sight Seeing Co., 129 N. Y. App. Div. 313; Paul v. Clark, 161 N. Y. App. Div. 456; Zoltovski v. Gzella, 159 Mich. 435; Willis v. Harby, 159 N. Y. App. Div. 94. (2) Plaintiff must recover, if at all, on the assignments of negligence pleaded in her petition and on no other. Steckman v. Railroad, 178 Mo. App. 378; Smith v. Pullman Company, 138 Mo. App. 238; Henry County v. Citizens Bank, 208 Mo. 209; Hamilton v. Railway, 114 Mo. App. 509; Ransom v. Union Depot Co., 142 Mo. App. 369. (3) Instructions should never be broader than the petition, whatever may be the scope of the evidence. Scrivner v. Railroad, 260 Mo. 421, 432; Degonia v. Railroad, 224 Mo. 564, 589; Young v. Dunlap, 190 S. W. 1041, 1043; Ruch v. Pryor, 190 S. W. 1037; Black v. Railroad, 217 Mo. 672; Beave v. Railroad, 212 Mo. 331; Mansur v. Botts, 80 Mo. 658. (4) Testimony that an automobile was going "fast" is inadmissible where it does not appear that the witness

was qualified to testify as to speed. Such testimony in such cases is nothing more than the conclusion of the witness and ought not to be admitted. An estimate of speed should have as a basis at least a reasonable opportunity to judge. Prieve v. Crandall, 187 S. W. 605, 607; Grand Rapids & I. R. Co. v. Huntley, 38 Mich. 537, 540. (5) By invoking the humanitarian doctrine the plaintiff necessarily admits that her own negligence contributed to create her position of peril. Ross v. Railroad, 113 Mo. App. 605; Cole v. Railroad, 121 Mo. App. 605; Grout v. Railroad, 125 Mo. App. 552; Woods v. Railroad, 188 Mo. 258; Roenfeldt v. Railroad, 180 Mo. 554. (6) The humanitarian rule takes into account the fact only that one is in danger and injury may be prevented by the exercise of ordinary care. Semple v. Railroad, 152 Mo. App. 25; Grout v. Electric Railway Co., 125 Mo. App. 552; Rowe v. Hammond, 172 Mo. App. 211; Young v. Bacon, 183 S. W. 1082; Linstroth v. Peper, 188 S. W. 1127; Carradine v. Ford, 187 S. W. 287; England v. Southwest Mo. R. Co., 180 S. W. 35; Roenfeldt v. Railroad, 180 Mo. 554; Kolb v. Transit Co., 102 Mo. App. 143; Mannes v. Railroad, 130 S. W. 87. (7) Defendant had a right to presume that plaintiff would exercise the care to be expected of a girl of plaintiff's age and intelligence under the circumstances. It only became his duty to make an effort to stop his machine when he discovered that plaintiff showed by her actions that she would not adopt the most natural and usual course under the circumstances. Semple v. Railroad, 152 Mo. App. 25; England v. S. W. Mo. R. Co., 180 S. W. 35; Childress v. Railroad, 141 Mo. App. 667; Shamp v. Lambert, 142 Mo. App. 573.

*Frumberg, & Russell* and *L. Frank Ottofy* for respondent.

(1) The defendant having failed to produce the plat which was made a part of the bill of exceptions, is now precluded from urging any of its points based on the evidence. Russell v. Joplin Transfer & Storage Co., 169 Mo. App. 685, 689; Sonnenfeld v. Rosenthal,

247 Mo. 238, 266; Scott v. Railroad, 158 Mo. App. 625, 629. (2) Defendant having submitted instructions embodying the humanitarian doctrine cannot now object to the submission of the case to the jury on that theory. Instructions 5 and 6 offered by defendants and given are conclusive on this point. Moakley v. MacAdaras, 165 Mo. App. 467, 475; People's Bank v. Stewart, 160 Mo. App. 643, 648, and cases cited; Mather v. Met. St. Ry. Co., 166 Mo. App. 142, 145; Cases under point 3. (3) Defendant tried the case on the theory that the highest degree of care was required of him, hence he cannot now complain. Defendant's instructions given, 5 and 6; Jones v. Pulitzer Pub. Co., 210 Mo. 200, 209; Rogers v. Union Iron & Foundry Co., 167 Mo. App. 228, 251; McCloskey v. United Railways, 162 Mo. 583, 589; Wallower v. Webb City, 171 Mo. App. 214, 219; Huss v. Heydt Bakery Co., 210 Mo. 44, 51, 71; Bongner v. Ziegenhein, 165 Mo. App. 328. (4) The defendant having introduced evidence after his demurrer at the close of plaintiff's case was introduced, thereby waived that demurrer and this court can only consider the demurrer at the close of the whole case, and that depends on all the evidence. Fry v. St. L., I. M. & S. Ry., 200 Mo. 377, 381. Semple v. United Ry., 152 Mo. App. 22. (a) Considering all the evidence the court could not under the authorities grant the demurrer. Meenach v. Crawford, 187 S. W. (Mo. Sup.) 879, 883; Grouch v. Heffner, 184 Mo. App. 365. (5) The defendant struck plaintiff while she was on the curb and threw her in the air. This is a physical fact which conclusively shows that he was driving at such high speed as to constitute wantonness and recklessness on his part. Haake v. Davis, 166 Mo. App. 249; McCreery v. United Railways, 221 Mo. 18, ·28; Young v. Dunlap, 190 S. W. (Mo. App.) 1043. (6) A verdict on conflicting evidence is conclusive on appeal. Genl. Renting & Inv. Co. v. Bernardon, 164 Mo. App. 384, 387; Johnson v. Fiala, 161 Mo. App. 359, 362; Turley v. Met. St. Ry. Co., 166 Mo. App. 655, 658; Gillfillan v. Schmidt, 167 Mo. App. 709, 711; Kettlehake v. American C. & F. Co., 171 Mo. App. 528,

538. (7) The defendant having failed to object to the testimony of Miss Crabb that the automobile was going "mighty fast" cannot now complain. However, the question of speed is not one for expert testimony. State v. Watson, 216 Mo. 420, 433; Scholl v. Grayson, 147 Mo. App. 652, 666; Moon v. Transit Co., 237 Mo. 425, 431; Young v. Bacon, 183 S. W. (Mo. App.) 1079, 1082; Statler v. C. & A. Ry., 200 Mo. 107, 123.

REYNOLDS, P. J.—This action was commenced by plaintiff, then Leona Roberts, by her next friend, against Oliver Shiras. Pending the appeal plaintiff married and by leave of court here appears in her married name. The defendant, Oliver Shiras, died pending the appeal, and his administrator, the Mississippi Valley Trust Company was duly substituted and now prosecutes the appeal.

The petition avers that defendant, being the owner and in charge of and operating an automobile, "carelessly and negligently and at an excessive, dangerous and unlawful rate of speed, to-wit, not less than twenty miles an hour, and without sounding a horn or giving other signal of his approach, and without using care or diligence to discover the peril in which plaintiff was placed by reason of said reckless, dangerous and unlawful speed of said automobile, and without using care or diligence to lessen the speed of said automobile, after seeing the peril in which plaintiff then was and after discovering same, permitted and caused said automobile to run upon and over the curb and sidewalk on said Page avenue, upon which plaintiff then was, and caused said automobile to collide with and strike plaintiff," to her injury and damage in the sum of $10,000, for which she claims judgment.

The answer after a general denial, pleaded contributory negligence, to which the usual reply was filed.

On December 12, 1911, plaintiff, then fifteen years old, was a student at the Emerson school, located on the north side of Page boulevard, between Arlington and Semple avenues, in the city of St. Louis. Semple av-

enue, entering Page boulevard from the south, ends there. About nine o'clock in the morning of that day she, with a schoolmate, Dorothy Crabb, saw two or more of their friends at a residence on the south side of Page boulevard who called to them to come over to them, plaintiff and Dorothy Crabb then being on the north side of Page. The two girls stepped off of the north curb of Page and seeing a street car coming along the tracks over Page boulevard from the west, stopped to let it pass. However, when that car crossed Semple, going east, it stopped, the far side of a cross-street then being the side at which to stop according to the city ordinances. The two girls then passed in front of the car, intending to continue across Page to its south side. Just as they cleared the car and were about three or three and one-half feet south of it, they saw an automobile coming east on Page boulevard and along the south side of the street car, its radiator about the rear of the street car, there being a space of two or three feet between the automobile and the street car, the automobile coming at the rate of about twenty-five miles an hour, as plaintiff testified. Dorothy Crabb stepped back toward the street car, which was then moving east, but plaintiff started to run across the street, a distance of about fifteen feet, as she says—about twenty-five feet, as one of her witnesses says, and just as she reached the curb on the south side of Page and had her left foot up on the curb, the left front wheel of the automobile struck her on the left foot, bruising and lacerating that and other parts of her body, but not breaking the limb. According to her testimony, she was knocked unconscious and could tell nothing more about the accident. According to her witnesses, bystanders, when the automobile struck her, it threw her clear up into the air, and both of the front wheels ran up and over the curb and rested in the grass plat between the curb and the sidewalk, where it stopped. There was testimony that the street car had been stopped to let passengers alight, many pupils and some teachers being aboard, and that many persons, principally chil-

dren, were going across Page to the schoolhouse. Plaintiff was confined to her bed for some little time after the accident and when, about a month afterwards, she resumed her attendance at school, she was using 'a crutch. Surgeons who attended her testified to the extent of her injuries.

On the part of defendant there was evidence tending to show that the automobile, at the time it was approaching and passing the street car, was going at the rate of about ten miles an hour, and that as soon as defendant, who was driving the car, saw plaintiff attempting to cross the street in front of him and pass the east end of the street car, he attempted to avoid striking her by turning his automobile into the south curb and he and a friend with him testified that they did not see plaintiff until the automobile was almost on her and defendant then turned toward the curb to avoid striking her but caught her just as she reached and was about to step on the curb.

On a trial before the court and a jury a verdict was returned in favor of plaintiff in the sum of $1500, and judgment followed. Defendant, interposing the usual motions, has appealed to our court.

As there were no instructions asked or given as to negligence in the failure to sound a horn or give other signal of approach, these allegations need not be noticed.

The errors assigned by learned counsel for appellant are to the refusal of the court to give the general and special demurrers asked by defendant at the close of plaintiff's evidence in chief and also at the close of the entire case; to the error of the court in admitting improper, illegal and incompetent evidence, and to errors in giving instructions hereafter referred to, and in refusing to give an instruction asked by defendant.

The special demurrer referred to is founded on the claim that there is a fatal variance between the allegation and the proof. We do not think so. Furthermore, when the evidence was offered no such objection

197 M. A.—31

was made, nor did defendant make the required affidavit of surprise.

In support of the allegation of the admission of improper and illegal evidence, and to the lack of evidence of the speed of the automobile, it is argued that the only evidence introduced by plaintiff as to the rate of speed at which the machine was going just before the accident, was that given by plaintiff and by Miss Crabb, and that plaintiff testified that she knew the machine was going twenty-five miles an hour, while Miss Crabb testified that it was "going mighty fast," but did not know how many miles an hour it was going, but it was "going fast." It is objected to the testimony of plaintiff that she was not qualified to testify as to the speed at which the automobile was traveling, as she only saw it for an instant. It is to be said as to this, however, that before allowing her to testify as to the speed at which she thought the automobile was traveling, the court permitted counsel for appellant to examine her as to her qualifications to testify as to speed and at the conclusion of that allowed her to give her estimate. We think the court was warranted in this ruling, and that her evidence is to be accepted on that matter.

It is further true that plaintiff said that she saw the automobile coming towards her but an instant before it struck her, or before she started to go across the street, but that fact does not entirely eliminate her testimony as to the speed at which the automobile was coming. It was for the jury to pass on its weight. Furthermore, as argued by learned counsel for respondent, the jury had before it the testimony as to the physical facts in the case, tending to show that the automobile was going at a high rate of speed. Its two front wheels ran up and over the curb of the street, the curb about three inches high, and two or three witnesses testified that it struck plaintiff with such force as to throw her up into the air. It is true that we have no evidence in the record as to what the weight of the plaintiff was, but it may be assumed that a young girl of

fifteen years of age, at the time in perfect health, must have had some weight.

As to the testimony of Dorothy Crabb which, it is true, was given as stated by counsel for appellant, it is to be noted that there was no objection made or exception saved to her so testifying and consequently it stood as before the jury for whatever probative force they chose to give to it.

With these facts before the jury we are unwilling to say that there was no substantial evidence in the case, either at the conclusion of plaintiff's case in chief, or at the conclusion of the whole case, to warrant the court in taking the case from the jury.

It is urged that plaintiff's first instruction was erroneous in that it departed from the petition, it being claimed that as the petition charges that plaintiff was injured while she was lawfully on the sidewalk of Page avenue, that this is ignored in the first instruction, and that the jury were there told that they could find for plaintiff if they found that she was traveling over or upon or across a public street at the time mentioned in the evidence. This point is practically a repetition of the point made in the special demurrer and which we have noticed in connection with that, holding that the claim of variance had not been properly raised or saved. But we do not think that this is such a variance as to be at all material. Whatever there is in this can be overcome by amendment of the petition if counsel are so advised.

It is urged that this instruction is broader than the issues made by the petition. Where an instruction authorizes a verdict on evidence irrelevant to the pleadings, it will not be held reversible error where the evidence was introduced without objection and the party objecting to the instruction did not pursue the steps provided by the statute.

It is argued that the third instruction given at the instance of plaintiff was erroneous for like cause. That instruction told the jury, "a pedestrian has the same right to use the street as has the owner of a vehicle,

and is not restricted to crossing the same only at a crossing, but may lawfully cross at any part of the street, using such care as persons of like age and of ordinary prudence and caution would use under the same or similar circumstances.'' We see no objection to this instruction save that possibly it is a mere statement of a legal proposition without applying it to the facts in the case, but no complaint is made of it on that ground.

It is charged that the second instruction given at the instance of plaintiff, based on what is commonly called ''the humanitarian doctrine,'' is erroneous because it permits a recovery for disregard of that doctrine, which it is said is an assignment of negligence not pleaded. This instruction told the jury that if they found from the evidence ''that the defendant, after he saw or by the exercise of the highest degree of care that a very careful person would use under the same or similar circumstances might have seen plaintiff in danger of being struck by defendant's automobile, and that defendant thereafter failed to use the highest degree of care that a very careful person would use under the same or similar circumstances to avoid striking plaintiff, and if you further find from the evidence that the defendant could have avoided striking plaintiff, you will find for the plaintiff, even though you may believe that the plaintiff was guilty of contributory negligence in crossing said street.'' In support of this attack on that instruction it is suggested that the petition does not count on the humanitarian doctrine. We think it does, although not very clearly and distinctly.

Assuming for argument, however, that the petition does count on the humanitarian doctrine, counsel for appellant argue, in further attack upon this instruction, that plaintiff admits that she was guilty of contributory negligence, and counsel say that the question then arises, what degree of care is owing plaintiff on the part of defendant, where the plaintiff admittedly was negligent, and they argue that this instruction No. 2, not only tells the jury that defendant had to use the highest degree of care to see that plaintiff was in dan-

ger of being struck, but that he had to use the highest
degree of care to avoid striking plaintiff, even though
plaintiff was guilty of contributory negligence and this,
counsel claim, erroneously states the law. We do not
think so, nor do we place that construction upon section
9 of the Act approved March 9, 1911 (Session Acts
1911, p. 330). As we construe this section, it does not
mean that in all cases the negligence of the injured per-
son, if that appears, relieves the defendant from the
duty of using the highest degree of care that a very
careful person would use under like or similar circum-
stances to prevent injury to persons traveling over or
across streets, highways or other places much used for
travel. In short, we do not think that the contributory
negligence of the injured party, if that is not the proxi-
mate cause of the injury, absolves the driver of the
vehicle from the exercise of the highest degree of care
when, on the application of the humanitarian or last
chance doctrine, he could have prevented the injury.
If the injury was occasioned by the failure of the
driver of the vehicle to exercise the highest degree of
care when he saw the danger, then such failure is the di-
rect, proximate cause of the injury and the negligence
of the injured party is but a secondary cause. As we
understand this section 9, it simply means that there
can be no recovery when the injury was proximately
caused by plaintiff's negligence. But if plaintiff's neg-
ligence was a secondary cause, as we may call it, and the
proximate cause was the want of the exercise and use
of "the highest degree of care that a very careful per-
son would use under like or similar circumstances, to
prevent injury," on the part of defendant, then defend-
ant is liable notwithstanding the contributing negligence
of the plaintiff. We hold this second instruction sub-
stantially correct.

The correctness of the fourth instruction given at
the instance of plaintiff is challenged. That instruction
told the jury that if they found from the evidence that
plaintiff, at the time of her injury, was a child of the
age of fifteen years and did not possess the discretion

of an adult or grown person at the time of the injury, they should consider these facts in determining whether or not the plaintiff was guilty of negligence at the time of the injury, which contributed to cause said injury, "and unless you find and believe from the evidence that plaintiff started to cross Page avenue without stopping and looking to see whether she could cross in safety *and unless you further find from the evidence that the street car in front of which she was crossing was bearing down upon her and that to avoid said car she ran directly in front of defendant's approaching automobile,* you cannot find that plaintiff was guilty of contributory negligence." We are obliged specifically to condemn the words we have italicized in the latter part of this instruction as unsupported by the evidence in the case. There is no evidence that we find in a careful reading of the testimony as abstracted, or even as given in the additional abstract of counsel for respondent, that plaintiff was either standing in front of the street car or that it was bearing down upon her, or that to avoid the car, she ran directly in front of defendant's approaching automobile. It is true that there is evidence to the effect that when plaintiff had finally started to cross the street, the street car had started, but neither she nor her companion were then in front of the car, and it cannot be said that the car was bearing down upon them or upon plaintiff. On the contrary, her testimony and that of her companion is that they were from two to three feet to the south of the street car, not in front of it, but off on the side of it, and as far as the evidence can be understood as to the fact, when plaintiff finally started to cross the street, the street car was not bearing down upon her but, starting on its tracks, was going past her and she had no thought of the street car. This instruction is highly prejudicial in this respect.

The instruction is further erroneous in that it excludes from the consideration of the jury all evidence of contributory negligence on the part of plaintiff, other than that referred to in the instruction.

The instruction as to the measure of damages is criticized in that it allowed recovery for "impairment of health, if any, which she (plaintiff) has sustained or will hereafter, with reasonable certainty, sustain by reason of said injuries and directly caused thereby." There is no evidence that we discover of any impairment of health. This instruction was erroneous, although we do not here hold it reversible error.

The judgment of the circuit court in this case must be and is reversed and the cause remanded.

*Allen* and *Becker, JJ.,* concur; *Allen, J.,* expressing his views in a separate opinion.

## CONCURRING OPINION.

ALLEN J.—I concur in the opinion of my brother REYNOLDS herein, but wish to add a few words respecting the contention that where a person upon the highway has negligently placed himself in a position of peril, the operator of an automobile is not required, by virtue of the statute, to exercise the highest degree of care to avoid striking and injuring him. The statute (subdivision 9 of section 12, of the Motor Vehicles Act of 1911, Laws 1911, p. 330) provides as follows:

"Any persons owning, operating, or controlling an automobile running on, upon, along or across public roads, streets, avenues, alleys, highways or places much used for travel, shall use the highest degree of care that a very careful person would use under like or similar circumstances, to prevent injury or death to persons on, or traveling over, upon or across such public roads, streets, avenues, alleys, highways or places much used for travel. Any owner operator or person in control of an automobile, failing to use such degree of care, shall be liable to damages, to a person or property injured by failure of the owner, operator or persons in control of an automobile, to use such degree of care, and in case of the death of the injured party, then damages for such injury or death may be recovered, as now provided or may hereafter be provided by law, unless the injury

or death is caused by the negligence of the injured or deceased person, contributing thereto."

It will be seen that by the terms of the act the degree of care imposed upon the owner or operator is "the highest degree of care that a very careful person would use, under like or similar circumstances." The latter part of the section does not in terms purport to exempt the owner or operator from this degree of care in a case where the injured person is guilty of negligence contributing to his injury, but does provide that where the injury or death is *caused* by such person's contributory negligence then no recovery may be had. In general the contributing or concurring negligence of a plaintiff precludes a recovery, for the reason that the law then regards his negligence, and not that of the defendant, as the proximate cause of the injury; but in cases where the principle of the humanitarian or last chance doctrine is applicable, the law does not regard the prior negligence of the plaintiff, whereby he placed himself in a perilous position, as being the proximate cause of the injury, if defendant is negligent in thereafter failing to avoid the injury. It is true that under that doctrine, as constantly applied by our courts, a defendant is held only to the exercise of ordinary care to avoid the injury—the standard being the same as in other cases. But this statute changes the entire standard of care required to be used by drivers of vehicles of this class. It requires the highest degree of care to be exercised under all circumstances. In exempting the owner or operator from liability where the injury or death is *caused* by the negligence of the injured or deceased person, the statute evidently means that this exemption shall apply only where the injury or death is *proximately caused* by such negligence, in keeping with the principles of the law of negligence generally; and neither relieves the owner or operator from liability, nor lessens the degree of care required of him to avoid injury to one who has negligently placed himself in a position of peril.