MARIE FLACH, Respondent, v. PHILIP D. C. BALL, Appellant.

St. Louis Court of Appeals. Opinion Filed April 4, 1922.

1. **TRIAL PRACTICE: Demurrer to Evidence: Viewed Most Favorable to Plaintiff.** In passing upon defendant's demurrer to the evidence, the evidence must be viewed in a light most favorable to plaintiff, admitting as true every fact and inference that may be reasonably adduced therefrom.

2. **NEGLIGENCE: Contributory Negligence: Automobiles Running by Stopped Street Car: Evidence: Pedestrian not Negligent as Matter of Law.** In an action for damages for personal injuries alleged to have been caused by being struck by defendant's automobile, where there was evidence to the effect that plaintiff on alighting from a northbound street car, intending to board an eastbound intersecting car, saw a southbound street car standing on the other track and when plaintiff started to cross in front of the northbound and southbound cars a crossing much used by pedestrians, she was struck by an automobile, and that the automobile in violation of a city ordinance was driven at a high rate of speed past said standing southbound car, and that she knew that the distance she had to

travel to cross in front of the southbound car was such that after that car resumed motion after discharging and receiving passengers it would have to go about twenty-seven feet before it could reach the line of travel she intended to take, and also presumed that no southbound vehicles would be driven past the southbound street car while said car remained standing, but that all such vehicles would remain at the rear of said street car until such car had resumed motion, *held* that her failure to look again at the southbound car before crossing the southbound car track was not contributory negligence as a matter of law.

3. WITNESSES: Impeachment: Prior Consistent Statements: Admissibility. Where the record showed only that defendant's witness was cross-examined with a view to contradict and impeach such witness, interrogating him regarding a written statement he had made a few days after the accident detailing his version of the occurrence, and it does not appear that the written statement was introduced in evidence, or that the matters therein contained were inconsistent with the testimony of the witness given at the trial, it did not show impeachment so as to entitle defendant to support him by proof of statements consistent with his testimony.

4. ———: ———: ———: Evidence: Statements Made Subsequent to Contradiction Proved: Competency. Even though there was proof of declarations of witness at variance with his testimony given at the trial, confirmatory declarations were not admissible which were made posterior to the contradictory declarations proved and subsequent to the time when the supposed interest or corruption of the witness existed.

5. INSTRUCTIONS: Assuming Undisputed Facts: Not Reversible Error. In an action for damages for personal injuries alleged to have been caused by being struck by defendant's automobile, where it was undisputed that a street car had stopped at the usual and regular stopping place on the north side of intersecting tracks, and such fact was not an issue of fact in dispute, the controverted issue of fact being whether the defendant started the automobile before the street car resumed motion and ran the same past the street car before it started, *held* it was not reversible error to give an instruction assuming that the street car had stopped.

6. NEGLIGENCE: Automobile: Pedestrian: Injured on Street: Statute: Driver's Duty: Degree of Care: Vigilant Watch: Timely Warning. Laws of 1911, pages 327 and 330, requiring every person operating automobiles upon approaching a pedestrian who is upon a traveled part of any highway, and not upon a sidewalk, to give timely signal with his bell, horn or other device for signaling, and

to use the highest degree of care to prevent injuries to persons crossing the streets, imposed on an automobile driver a duty as he approached a pedestrian who was upon a traveled part of a public street to keep a vigilant watch and look-out and to give timely signal of warning, and an instruction based upon such requirements was proper notwithstanding a city ordinance provided only for a signal at crossings.

7. EVIDENCE: Automobiles: Rate of Speed: Experts. The rate of speed at which an automobile is running is not a matter exclusively for expert testimony, and as to whether a witness was able to judge the speed from the view he had of it was a matter for the jury to weight his testimony and give it such credence as it deemed it entitled to.

Appeal from the Circuit Court or St. Louis County.— *Hon. G. A. Wurdeman*, Judge.

AFFIRMED.

*Bryan, Williams & Cave* for appellant.

(1) The court erred in refusing defendant's instruction in the nature of a demurrer to the evidence, for the reason that the plaintiff Marie Flach was herself guilty of contributory negligence as a matter of law. Keele v. Railroad, 258 Mo. 62; Lowry v. Smith, 199 S. W. 437; Ginter v. O'Donoghue, 179 S. W. 732. (2) The court erred in giving plaintiff's instruction No. 1 authorizing a finding against the defendant. This instruction thus clearly assumes that the southbound street car was stopped when Mrs. Flach crossed over in front of it. This was a most material and a controverted fact. That the assumption in the instruction of such a material and controverted fact is error requires no authority. (3) The court erred in giving instruction No. 4 for the plaintiff directing a finding against the defendant. This accident happened in June, 1917. At that time the Laws of 1911, regulating motor vehicles, were still in effect. These laws contain no provision whatever requiring the

sounding of signals under the conditions here (Laws 1911, p. 326). The ordinance of the city of St. Louis in effect at the time of the accident provided that "drivers of motor vehicles of all kinds, shall, when approaching crossings or in rounding curves or corners on public streets, sound their signals in such a way as to give a warning to other vehicles and pedestrians of their approach." The term "crossing," as used in the ordinance, means and can only be construed to mean a regular street crossing. Echmann v. Buchhirt, 128 Wis. 385. The place of the accident under all the evidence was not a street crossing. The question of whether the failure to sound a signal under the circumstances in this case was or was not under all the evidence negligence was one for the jury, and it was error on the part of the court to tell the jury, as a matter of law, that it was defendant's duty to sound a signal. (4) The court erred in refusing to allow the defendant to show that his witness Caldwell had, shortly after the accident, given testimony to the same effect as his testimony on this trial, after the plaintiff, on cross-examination, had attempted to impeach this witness by showing that he had made certain prior statements inconsistent with his testimony. Kelly v. Insurance Co., 192 Mo. App. 24; State v. Grant, 79 Mo. 33; State v. Whelehon, 102 Mo. 20; State v. Sharp, 183 Mo. 737; State v. Maggard, 250 Mo. 348. (5) According to the testimony of the witness Mummert, he was at no time in a position to, and at no time had opportunity to observe the speed of the defendant's car. His conclusion as to its speed was based solely on his observation from a point 150 feet from the accident, of the effect of the blow of the automobile upon Mrs. Flach. He was not qualified on his own testimony to testify as to the speed of the car. The court, therefore, erred in permitting him to testify as to the car's speed and in refusing to strike out that portion of his testimony. Stotler v. Railroad, 200 Mo. 107, 124 and 128; Campbell v. Railroad, 175 Mo. 161, 177.

*George E. Mix, Abbott, Fauntleroy, Cullen & Edwards* and *Curlee & Hay* for respondent.

(1) Plaintiff was not guilty of negligence as a matter of law. Carradine v. Ford, 195 Mo. App. 684; Cool v. Peterson, 189 Mo. App. 718; Ginter v. O'Donoghue, 179 S. W. 734; Bongner v. Ziegenheim, 165 Mo. App. 328; Hodges v. Chambers, 171 Mo. App. 563; Moffatt v. Link, 229 S. W. 837; Meenach v. Crawford, 187 S. W. 879; Arseneau v. Sweet, 106 Minn. 257; Winckowski v. Dodge, 183 Mich. 303, 149 N. W. 106. (2) Plaintiff's instruction number 1 does not assume that the car had stopped at the regular stopping place. But if the court had expressly told the jury that it had so stopped, it would have done only what every witness in the case had done. The fact was not disputed by a single witness. It is admitted in defendant's statement and brief. The issue was whether the car which had stopped at the regular stopping place had resumed motion before defendant started his machine. The instruction plainly and properly tenders that issue. Since the fact, alleged to be assumed, was not only not controverted, but was admitted by defendant on the trial, and is admitted in defendant's brief in this court it would not have been error to assume it in the instruction. Huckshold v. United Rys. Co. of St. Louis, 234 S. W. 1072; Deschner v. Railway, 200 Mo. 310; Davidson v. Transit Co., 211 Mo. 320; Phelps v. Zinc Co., 218 Mo. 572; Orcutt v. Century Bldg. Co., 214 Mo. 35; Dee v. Nachbar, 207 Mo. 393; Small v. Kansas City, 185 Mo. 291. (3) Instruction number 4 told the jury what, both under the statute and ordinances and under the common law unaided by statute or ordinance, it was the duty of the driver of an automobile to do. McFern v. Gardner, 121 Mo. App. 1; Johnson v. Traction Co., 176 Mo. App. 174; Ostermeier v. Implement Co., 255 Mo. 129; Eisenman v. Griffith, 181 Mo. App. 187; Laws 1911, p. 32 of sec. 2; Laws 1911, page 330, subdivision (9); Arenson v. Ricker, 185 Mo. App. 531; Revised Code City of St. Louis, 1912, Sec. 1338.

(4)    The statements made by witness Caldwell in the criminal trial were properly excluded. They were made after the contradictory statements were signed and after he had been seen by a representative of the defendant. They were made under the very same circumstances and when subject to the very same influences as when made in the trial of the instant case. Under all the authorities, such statements were inadmissible. All the cases hold that to render evidence of similar statements admissible it must be shown that the statements were made prior to the making of the contradictory statements and under circumstances when no moral influence exists to color or misrepresent the facts. Kelley v. Insurance Co., 192 Mo. App. 24; State v. Sharp, 183 Mo. 737; State v. Maggard, 250 Mo. 335; State v. Caddy, 15 S. D. 167, McCord v. State, 83 Ga. 521, 8 Am. Crim. Rep. 636; Sweeney v. Sweeney, 121 Ga. 293; Gates v. People, 14 Ill. 433; Stolp v. Blair, 68 Ill. 541; Waller v. People, 209 Ill. 284, 70 N. E. 681; Chicago City R. Co. v. Matthieson, 212 Ill. 292, 72 N. E. 443; Rhutasel v. Stephens, 68 Iowa 627; State v. Petty, 21 Kan. 54. (5)    (a)    Harden J. Mummert, a mechanical engineer, whose work had to do with automobiles and with determining movements from the observation of effects produced by them, and who had owned and run a machine since 1904, saw the machine from the rear, saw the plaintiff struck and hurled over the machine and to the street. He testified that he did, from what he saw, form an opinion as to the speed of the car. He was manifestly qualified, well qualified, to give an opinion. State v. Watson, 216 Mo. 420; Aston v. St. Louis Transit Co., 105 Mo. App. 226; Hough v. Automobile Co., 146 Mo. App. 58; Ottofy v. Trust Co., 197 Mo. App. 473; Lorenzen v. Railroad, 249 Mo. 182; Miller v. Jenness, 34 L. R. A. (N. S.) 182; Dugan v. Arthurs, 34 L. R. A. (N. S.) 778; Harnau v. Haight, 189 Mich. 600. (b)    But Mummert's testimony, whether admissible or not, was harmless. The only issue on speed submitted to the jury was whether the automobile was running in excess of ten miles per hour.

BRUERE, C.—This suit was brought by the plaintiff to recover damages for personal injuries sustained by her, alleged to have been negligently caused by being struck by defendant's automobile, while she was walking across Hamilton avenue, in the city of St. Louis, near its intersection with the Hodiamont street car tracks.

The petition charged negligence in operating said automobile in violation of the ordinances of the city of St. Louis in this: (a) Operating said automobile at a rate of speed in excess of ten (10) miles per hour. (b) Failure to give any signal by bell, horn or otherwise, to warn persons approaching or crossing over the intersection or crossing on Hamilton avenue, of the approach of said automobile and (c) failure to stop such automobile and remain at the rear of a southbound Hamilton avenue street car, which was at the time standing to take on and let off passengers on the north side of the Hodiamont street car tracks.

The petition further charged the defendant with failure to exercise due care to keep a lookout and a vigilant watch for persons upon said street approaching the aforesaid intersection thereof, and failure to stop the automobile or slacken its speed or change its course after he saw, or by the exercise of due care could have seen, the plaintiff crossing the street and in dangerous proximity to said automobile.

The answer was a general denial coupled with a plea of contributory negligence on the part of plaintiff as follows:

(1) Failure, before crossing Hamilton avenue, to look and listen for approaching vehicles.

(2) Running in front of a southbound Hamilton avenue street car when her view was so obstructed that she could not see whether any vehicle was approaching, into that portion of Hamilton avenue to the west of said car, and when the drivers of any such vehicle could not see her approaching; and running immediately in

front of the defendant's automobile and so close thereto that it was impossible to stop said automobile before striking her.

The reply put in issue the new matter set up in the answer.

At a trial a jury awarded plaintiff a verdict for four thousand dollars; from a judgment on that verdict defendant appeals.

The facts disclosed by the evidence are: Hamilton avenue and the Hodiamont tracks intersect each other at right angles. The Hodiamont street car line runs east and west on a private right-of-way and Hamilton avenue is a public street running north and south. Two street car tracks were maintained on Hamilton avenue and also on the right-of-way of the Hodiamont line. The eastern track, on Hamilton avenue, was used for northbound and the western track for southbound cars. The southern track, on the Hodiamont line, was used for eastbound and the northern track for westbound cars. The northbound cars stopped, to take on and let off passengers, on the south side and the southbound cars on the north side of the Hodiamont tracks, the eastbound cars on the west side and the westbound cars on the east side of the Hamilton avenue tracks. Hamilton avenue, at the point of the accident, is thirty-six feet wide from curb to curb and the Hodiamont right-of-way is thirty feet wide. The width of the tracks is five feet ten inches. The distance between the tracks on the Hamilton avenue and Hodiamont line is four feet eight inches and six feet two inches respectively; and the distance from the west rail of the southbound track, on Hamilton avenue, to the west curb is ten feet and five inches; and the distance from the south rail of the eastbound track, on the Hodiamont line, to the south line of the said right-of-way is about six feet six inches.

The evidence further disclosed that Hamilton avenue, at its intersection with the Hodiamont street car tracks, was a transfer point, much used as a crossing by

pedestrians, and that it was customary for passengers, alighting from northbound Hamilton cars and intending to board eastbound Hodiamont cars, to cross south of the Hodiamont tracks and north of the south line of Hamilton avenue.

Just prior to the accident plaintiff was a passenger on a northbound Hamilton avenue car. She intended to board an eastbound Hodiamont car at the intersection of Hamilton and the Hodiamont tracks. When the northbound Hamilton car reached said intersection it stopped on the south side of the Hodiamont tracks, and as plaintiff alighted from the front platform thereof, she observed a southbound Hamilton car standing on the north side of the Hodiamont tracks and an eastbound Hodiamont car standing on the west side of the Hamilton avenue tracks. She further observed that these cars had stopped for the purpose of taking on and letting off passengers and that Hamilton avenue between these three standing cars was free of vehicles. Thus noticing the situation before her (and intending to take the eastbound Hodiamont car) plaintiff passed immediately around the front end of the northbound car and hurridly walked west, and about four feet south of the Hodiamont tracks, in front of the southbound car, and had reached a point somewhere between the west rail of the southbound track and the west curb of Hamilton avenue when she was struck and seriously injured by defendant's automobile, which was being driven southwardly.

There was evidence to prove that the automobile, at the time of the accident, was being operated in excess of the ordinance speed and was proceeding, according to some witnesses, at a rate of speed as high as thirty-five miles per hour. There was also evidence tending to show that said automobile ran past the southbound Hamilton car while it was standing at the regular stopping place, for the purpose of taking on and letting off passengers; and that no signal of any kind was given

by the chauffeur before or as it crossed the Hodiamont tracks. All the evidence was that the southbound car had stopped on the north side of the Hodiamont tracks, for the purpose of taking on or letting off passengers; the issue as to that car was whether or not the automobile was driven past it while it remained standing as aforesaid.

At the close of the whole case the defendant offered, and the court refused to give, an instruction in the nature of a demurrer to the evidence. Defendant contends that this instruction should have been given, for the reason that the plaintiff was herself guilty of contributory negligence as a matter of law.

At the trial plaintiff testified that at the time she started to cross the track in front of the northbound and southbound car she noticed the southbound car standing and supposed that the coast was clear, because she knew the city ordinance required vehicles to remain at the rear of a street car, which had stopped to take on or let off passengers, and to remain standing until such street car resumed motion; that she did not know when the southbound car started but that she was certain it did not start before she got to the southbound track; and that she did not look to the north or to the south after she started across but looked west in the direction of the eastbound Hodiamont street car.

Counsel for defendant contend that assuming it to be true that plaintiff saw the southbound car standing, and knew no vehicles should pass it, yet this did not excuse her from looking to see if and when the southbound car started; that the duty was imposed upon her, before crossing the southbound street car track, in the exercise of ordinary care for her own safety, to again look and see where the southbound car was and whether she could still cross its track with safety, that having failed to do so, she was guilty of negligence as a matter of law.

Viewing the evidence, as we must, in a light most favorable to plaintiff and admitting as true every fact

and inference that may be reasonably deduced therefrom, we cannot hold, as a matter of law, that plaintiff was guilty of contributory negligence.

It will be noted that there was evidence to the effect that the southbound car remained standing at the time plaintiff was struck by the automobile, and that the automobile, in violation of the city ordinance, was driven past the standing car at a high rate of speed. It will be further noted that plaintiff when she started to cross the track, in front of the northbound and southbound car, saw the southbound car standing about six feet north of the Hodiamont tracks. She knew that the distance she had to travel to cross the southbound track was about fifteen feet and that the southbound car had to travel, after it resumed motion, about twenty-seven feet before it could reach the line of travel she intended to take; she also presumed that no southbound vehicles would be driven passed the southbound street car while said car remained standing, but that all such vehicles would remain at the rear of said street car until such car had resumed motion. Thus viewing the situation it cannot be said that her failure to look again at the southbound car, before crossing the southbound car track, was contributory negligence as a matter of law.

According to plaintiff's evidence she was not endangered by the southbound car. She had safely crossed the car tracks and would have had ample time to cross the street in perfect safety, if defendant had observed the city ordinances, as she had only about twenty-five feet to travel while the automobile (if standing at the rear of the southbound car) had to start and proceed about seventy feet to reach her line of travel. Under the circumstances plaintiff had the right to presume that one driving an automobile would observe the city ordinance by remaining at the rear of the southbound car until such car had resumed motion.

We hold that the question of defendant's negligence was one for the jury. [Carradine v. Ford, 195 Mo. App.

701, 187 S. W. 285; Bongner v. Ziegenhein, 165 Mo. App. 330, 147 S. W. 1112; Strauchon v. Met. St. Ry. Co., 232 Mo. 587, 135 S. W. 14; Cool v. Peterson, 189 Mo. App. 717, 175 S. W. 244; Moffatt v. Link, 229 S. W. 836; Ginter v. O'Donoghue, 179 S. W. 732 (not officially reported); Meenach v. Crawford, 187 S. W. 879 (not officially reported.)]

At the trial one L. J. Caldwell testified, on behalf of the defendant, that he was the motorman of the southbound Hamilton car and that he had started this car as plaintiff was coming around the front end of the northbound Hamilton car. On cross-examination, counsel for plaintiff, with a view to contradict and impeach this witness, interrogated him regarding a written statement he had made a few days after the accident detailing his version of the occurrence. Defendant then offered to prove that this witness had testified *after* the date of the written statement, in the court of criminal correction, to the same effect as he testified upon the trial. Upon objection made, the court refused to allow the defendant to introduce said testimony. Defendant urges that this action of the court was error.

It does not appear from the record before us that the written statement was introduced in evidence, or that the matters therein contained were inconsistent with the testimony of the witness given at the trial. The witness, therefore, not having been impeached the testimony offered was properly excluded.

Moreover, the testimony of the witness in the court of criminal correction was given subsequently to the date of the written statement and at a time when the motive imputed to him existed. Therefore, granting that the plaintiff proved declarations of the witness at variance with his testimony given at the trial, the confirmatory declarations were not admissible because they were made posterior to the contradictory declarations proved by the plaintiff and subsequent to the time when the supposed interest or corruption of the witness existed.

In Conrad v. Griffey, Howard 11, 52 U. S. 1. c. 491, the Supreme Court in passing on this question says:

"In this court it has been held that such evidence is not admissible, if the statements were made subsequent to the contradictions proved on the other side. . . . So far as regards principle, one proper test of the admissibility of such statements is, that they must be made at least under circumstances when no moral influence existed to color or misrepresent them. . . . But when they are made subsequent to other statements of a different character, as here, it is possible, if not probable, that the inducement to make them is for the very purpose of counteracting those first uttered. This impairs their force and credibility, when, if made before the others, they might tend to sustain the subsequent evidence corresponding with them. . . . In this case, then, not having been made prior in time, they do not appear on principle or precedent to be competent." [See, also, Conrad v. Griffey, 14 L. Ed. (U.S.) 37; 41 L. N. S. 906; Stolp v. Blair, 68 Ill. 541; Legere v. State, 111 Tenn. 368, 77 S. W. 1059; Queener v. Morrow, (1 Cold.) 123 Tenn.—State v. Caddy, 87 N. W. 927; State v. Potty, 21 Kans. 54; Robb v. Hackley, 23 Wend. 50.]

Kelly v. Insurance Company, 192 Mo. App. 24, State v. Maggard, 250 Mo. 348, and the other cases cited by counsel for defendant, do not uphold him in his contention. While it was held in these cases that where a witness is impeached, by proof of acts and statements inconsistent with his testimony given at the trial, prior statements of the witnesses correspondent with his testimony are admissible for the purpose of rehabilitation, the facts in these cases did not raise the question presented in the instant case, and we find nothing in these cases that is in conflict with the rule laid down by the Supreme Court in Conrad v. Griffey, supra.

It seems clear to us that to allow confirmatory declarations, such as were sought to be given in evidence in the instant case, would have a direct tendency to cor-

209 M. A.—26

rupt the administration of justice. This is well pointed out by the Supreme Court of Tennessee in the case of Queener v. Morrow, supra, where the court says:

"But to allow consistent statements, for the purpose of giving support to the credit of the witness, made after the contradictory representations by which it is sought to impeach him, would be to put it in the power of every unprincipled witness to bolster his credit and perhaps escape the just consequence of his own falsehood and tergiversation."

We rule this point against the defendant.

Defendant's next assignment of error is that the court erred in giving instruction No. 1, which, in part, told the jury:

"If, therefore, you find and believe from the evi- that as the plaintiff . . . was in the act of crossing Hamilton avenue in front of the southbound Hamilton avenue car, *which had stopped at the usual and regular stopping place on the north side of the suburban car tracks* . . . the defendant, through his agent and servant driving his automobile, started defendant's machine before the said street car had resumed motion and ran the same past the said car at a high and dangerous rate of speed, . . . then your verdict must be for the plaintiff."

The italics are ours and indicate that part of the instruction to which objection is made. That the south-bound Hamilton avenue car stopped, at the usual and regular stopping place, was not an issue of fact in dis-putes. All the witnesses testified that it so stopped, and the defendant in his brief admits that "the theory of the defendant was to the effect that the defendant's automoblie was proceeding southwardly following the southbound street car and that when the southbound street car came to a stop, defendant's automobile also stopped." It was, therefore, not reversible error to as-sume in the instruction the existence of a fact over which there was no controversy. The controverted issue of fact

was whether the defendant started the automobile before the said street car resumed motion and ran the same past the said car. The instruction submitted that issue to the jury. [Davidson v. Transit Company, 211 Mo. l. c. 356-7, 109 S. W. 583; Phelps v. Zinc Company, 218 Mo. l. c. 580-581, 117 S. W. 705; Sotebier v. Transit Company, 203 Mo. 702, 102 S. W. 651; Taylor v. Iron Company, 133 Mo. l. c. 365, 34 S. W. 581.]

Defendant challenges the correctness of instruction No. 4, given to the jury. Said instruction reads:

"You are instructed that it is the duty of the driver of an automobile upon a street or highway at a place and approaching a place at which pedestrians are accustomed to be or are likely to be upon such street or highway and crossing such street or highway, to keep a vigilant watch and lookout for such persons, and to give a signal or warning of the approach of such machine. If, therefore, you find and believe from the evidence that the plaintiff, at the time she was struck and injured, was at a place upon Hamilton avenue at which pedestrians are accustomed to cross the said Hamilton avenue, and was at the time in the exercise of reasonable care and diligence for her own safety, and that the defendant and his agent and servant in charge of said car in driving the said machine south upon said Hamilton avenue upon said place and approaching the same, failed to keep a vigilant watch for pedestrians at and about the said Hamilton avenue at the place aforesaid and failed to give a signal or warning of the approach of such machine, and that such act, if you so find, was negligence on the part of defendant and his agent and servant, and that as a direct result thereof the plaintiff was run upon and injured, then your verdict should be for the plaintiff."

Section 1338 of the city ordinance of the city of St. Louis introduced in evidence reads as follows:

"Signals by Motor Vehicles When Approaching Crossings, Etc.—Drivers of motor vehicles of all kinds

shall, when approaching a crossing or in rounding a curve or corner on a public street, sound their signals in such a way as to give a warning to other vehicles and to pedestrians of their approach.''

Defendant contends that the word "crossing" as used in this ordinance means a reguar street crossing; that the place of the accident was not a crossing, as that term is used in the ordinance, and that there was, therefore, no duty on the driver to sound a signal on approaching the place of accident.

In considering the objection to the instruction we need not determine what constitutes a crossing within the meaning of the ordinance.

At the time of the accident there was in effect a statute of this State requiring every person upon approaching a pedestrian, who is upon the traveled part of any highway and not upon a sidewalk, to give a timely signal with his bell, horn or other device for signaling. [Laws of 1911, page 327.]

There was also another statutory law in force at said time, which made it incumbent upon any person operating an automobile upon or across public roads, streets, highways or places much used for travel to use the highest degree of care that a very careful person would use, under like or similar circumstances, to prevent injury or death to persons on or traveling over or across such public roads, streets or places much used for travel. [Laws of 1911, page 330.]

There was, therefore, a duty on the defendant as he approached plaintiff, who was a pedestrian and who was upon the traveled part of a public street, to keep a vigilant watch and lookout for her and give a timely signal of warning. [Aronson v. Ricker, 185 Mo. App. l. c. 531, 172 S. W. 641; Johnson v. Traction Company, 176 Mo. App. 174, l. c. 188, 161 S. W. 1193.]

Appellant further urges that the court erred in permitting a witness, over the objection of the defendant, to testify as to the speed at which the automobile was

going at the time of the accident. This witness testified that the speed of the machine was twenty miles an hour. It is contended this witness was not qualified to testify as to the speed of the car because he did not have such a view as to enable him to judge therefrom the speed at which it was moving. Witness was one hundred and fifty feet back of the automobile when he saw it strike plaintiff. He testified that he had driven automobiles for many years and often had occasion to observe them and could judge of their speed. The rate of speed at which an automobile is running is not a matter exclusively for expert testimony. As to whether the witness was able to judge the speed from the view he had of it was a matter for the jury; it was for it to weigh his testimony and give it such credit as it deemed it entitled to. We think the ruling of the court was proper. [State v. Watson, 216 Mo. 433, 115 S. W. 1011; Aston v. St. Louis Transit Company, 105 Mo. App. 231, 79 S. W. 999; Ottofy v. Trust Company, 197 Mo. App. 473, 196 S. W. 428.]

Finding no reversible error in the record the Commissioner recommends that the judgment be affirmed.

PER CURIAM.—The opinion of Bruere, C., is adopted as the opinion of the court. The judgment of the circuit court of the county of St. Louis is accordingly affirmed. *Allen, P. J.,* and *Becker* and *Daues, JJ.,* concur.