262 S.W.2d 13 (1953)
JOHNSON
v.
COX.
No. 43440.
Supreme Court of Missouri. Division No. 1.
November 9, 1953.
Barnhart, Wood and Bransford and C. V. Barnhart, St. Louis, for appellant.
Kerth & Schreiber, Clayton, for respondent.
COIL, Commissioner.
Juanita Johnson, plaintiff-appellant, sought $15,000 damages for the alleged wrongful death of her husband who was fatally injured when the motorcycle he was riding collided with an automobile driven by defendant-respondent. Juanita has appealed *14 from the judgment entered on defendant's verdict and asserts that the trial court erred in giving sole cause instruction 2 and in overruling her motion to require a witness to answer a question asked at a deposition.
About 9 o'clock on a dark, clear night, defendant drove eastwardly on the upgrade, dry, 40'-wide, asphalt pavement of St. Charles Rock Road to a place opposite a store located 68 feet north of the north edge of the street. At 10 m. p. h., she began a left turn for the purpose of entering the store's well-lighted parking lot. When she had traveled 10 feet in her turn, and when the left front wheel of her automobile was about 5 feet north of the center line, and when her automobile was facing northeast, a dark-colored motorcycle, being operated westwardly by deceased, collided "head on" with the center of the front of the automobile. Defendant was the only eyewitness. She said she heard no sound prior to, and saw the motorcycle just an instant before, the impact, when it was not more than 5 feet away; she estimated its speed at 45-50 m. p. h.; it had no lights burning; her headlights illuminated the pavement ahead of her car for a distance of approximately 60 feet.
Plaintiff relied on defendant's testimony given in a deposition and certain expert testimony as to stopping distances. She submitted her case under a humanitarian instruction hypothesizing defendant's failure to stop or swerve.
Defendant's instruction 2 was: "The Court instructs the jury that if you find and believe from the evidence that Marvin Johnson, deceased, on the occasion described in the evidence, operated the motorcycle as described in the evidence, at a time after dark without a lighted headlight, or at a rate of speed of approximately 45 to 50 miles per hour, and if you further find that such rate of speed, if any, was high, dangerous and excessive, and if you further find and believe that such act or acts, if any, constituted negligence and were the sole cause of the collision described in the evidence, and that defendant was not guilty of negligence as submitted in other instructions herein, then your verdict must be in favor of the defendant, Lovie Cox." Plaintiff attacks this instruction on three grounds, one of which must be sustained. However, inasmuch as the case may be retried, we should dispose of the other two grounds.
Plaintiff contends that the evidence, viewed from a standpoint most favorable to defendant, demonstrated that defendant was negligent as a matter of law and thus a sole cause instruction should not have been given. Wilkins v. Stuecken, 359 Mo. 1047, 1052, 225 S.W.2d 131, 134[3, 4]. This contention is based upon the proposition that deceased's motorcycle had to be at a place where it was visible in the headlights of defendant's automobile at the time she began her left turn; that defendant was charged with a duty to look and therefore must have seen what looking would have revealed. This argument is fortified by mathematical calculations based on defendant's own testimony tending to demonstrate that the motorcycle was only 50 feet away at the time defendant began her left turn, and thus well within the beams of her headlights. This contention overlooks, however, that we may not assume the truth of a fact based upon an inference which is not compelled. That is to say, the validity of plaintiff's contention in this respect depends upon assuming as a fact that deceased's motorcycle was in such a position on the highway that it was, at all times prior to the collision, within the view afforded by defendant's headlights. There was no testimony as to the motorcycle's position on the highway or its direction of travel until it was within five feet of the collision point. Whether prior thereto the motorcycle was on the extreme north side of the street, or in the process of moving from the north side to the center of the street, or was traveling westwardly in a straight line, is not shown. While the jury might infer from the evidence that the motorcycle must have been in a position to have been seen by defendant, if she had looked, in time for her to have stopped or swerved, we may not assume such as a fact *15 when determining whether defendant was negligent as a matter of law. Furthermore, even if it be assumed that the motorcycle was for a certain distance in a portion of the highway within the reach of defendant's headlights, to convict defendant of negligence as a matter of law, we must also assume as a fact that defendant's headlights would have made visible in time the dark-colored, unlighted, fast-moving motorcycle; and this, despite the evidence that there were bright lights on the store mentioned which shone toward the highway. We are of the opinion that defendant's negligence was a jury question under plaintiff's humanitarian submission. Jants v. St. Louis Public Service Co., 356 Mo. 985, 993, 204 S.W.2d 698, 701[1].
Plaintiff also contends that there was no substantial evidence to support the submission of a speed of 45-50 m. p. h. This contention is based on the proposition that defendant's estimate of the motorcycle's speed (the only direct evidence as to speed) was of no probative value and should have been excluded. As noted, defendant saw the motorcycle only an instant before impact and when the motorcycle was not more than 5 feet from the front of her automobile. By mathematical computation, assuming the accuracy of her estimate of her speed, the motorcycle's speed, and its distance away, she observed it only for about 1/16 or 1/18 of a second. Defendant also said, however, that she saw the motorcycle long enough to see that there were no lights and that it was a motorcycle; that her estimate of its speed was based on what she saw in that "fleeting second before the impact" and "based on the impact I received and based on the fact I did not see him at any time previous to that." Inasmuch as defendant professed to be able to judge the speed of the approaching motorcycle, taking into account that she was herself a driver of an automobile, and that she observed the damage to the front end of her automobile as a result of the collision (the bumper was bent into the grille with considerable damage to the grille), we think that the trial court correctly permitted her to testify as to her estimate of the speed of the approaching motorcycle. The weight of that testimony was for the jury after having the benefit of plaintiff's cross-examination on the subject. Tutie v. Kennedy, Mo.App., 272 S.W. 117, 121[9]; Flach v. Ball, 209 Mo.App. 389, 404, 240 S.W. 465, 469[7].
Instruction 2 is prejudicially erroneous, however, because it fails to hypothesize facts from which a jury could find that deceased's negligence was the sole proximate cause of the collision. We have repeatedly held that a proper sole cause instruction must so do, as well as to (as does instruction 2) negative the defendant's humanitarian negligence as submitted by plaintiff. Long v. Mild, 347 Mo. 1002, 1009, 149 S.W.2d 853, 858[9, 10]; Semar v. Kelly, 352 Mo. 157, 164[4], 176 S.W.2d 289, 293[7, 9]; Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 1163, 159 S.W.2d 254, 257[7, 8]; McGrath v. Meyers, 341 Mo. 412, 418, 107 S.W.2d 792, 795[7]; Janssens v. Thompson, 360 Mo. 351, 360, 228 S.W.2d 743, 748[6].
Instruction 2 submits only the abstract propositions that either deceased's negligent speed or his negligence in failing to have a burning light on his motorcycle was the sole proximate cause of the collision. Such separate independent hypotheses of negligence, each of which is asserted as a complete defense, must each be complete and sufficient in itself. The instant hypotheses were so general that the jury might well find for the defendant upon a finding of deceased's concurring negligence, as well as his sole negligence. In other words, the instruction does not hypothesize facts, a finding of which would exclude defendant's negligence as a possible concurring cause of the collision. True, the instruction permits the jury to conclude that deceased's negligent speed or his negligence in failing to have a light was the sole cause of the collision, but no facts are hypothesized upon which the jury could base either conclusion. In brief, the instruction does not present a complete state of facts and circumstances exonerating defendant of negligence and demonstrating that plaintiff alone was at fault and the responsible cause *16 of the collision. Thus, the instruction was likely to confuse the jury; it tended to divert attention from the humanitarian issue as to whether defendant should have seen deceased in time to have avoided the collision by stopping or swerving; and it could be so understood as to authorize the jury to find deceased's antecedent negligence a bar to plaintiff's recovery.
We have assumed that there was, or at a retrial might be, evidence justifying a sole cause instruction. We are of the opinion, however, that if the evidence at a retrial is substantially the same as the evidence in the present record, there will be no facts in evidence which can be hypothesized to permit the jury to find that deceased's negligence was the sole proximate cause of the collision. It would appear, under the instant facts, that the only way the jury could find defendant free of concurring negligence in causing the collision was to require the jury to find either deceased was in a position in which there was no danger of collision with defendant's car when she began her left turn, or that the speed of, and lack of light on, deceased's motorcycle made it not visible to plaintiff before or after she started her left turn.
Now, we have held that defendant was not guilty of negligence as a matter of law. But, even so, there was no substantial evidence from which it could be found or reasonably inferred that deceased was in a position where no collision with defendant was likely when defendant began and was proceeding with her left turn. Consequently, it would appear that defendant may be exonerated of negligence only upon a finding by the jury that defendant did not and could not in the exercise of the highest degree of care have seen the deceased in time to have avoided the collision. Thus, it follows that defendant's instruction, under the facts of this case, should have been a converse instruction whereby one of the essential elements of plaintiff's humanitarian case would be destroyed; that is, that the jury find that because deceased was proceeding on a dark-colored motorcycle, without lights, at night at a rate of speed of 45-50 m. p. h., defendant, in the exercise of the highest degree of care, did not or could not have seen him in time to have avoided the collision. It is, of course, fundamental that there must be facts in evidence which will sustain a sole cause defense before defendant may properly have a sole cause instruction. Long v. Mild, supra, 149 S.W.2d 860.
Because this case must be reversed and remanded, it is necessary to notice plaintiff's further contention that the trial court erred in overruling her motion to require a deposition witness to state the names of eyewitnesses to the accident admittedly in his possession. Plaintiff, in so far as this case is concerned, was the deceased's widow.
It appears, however, that deceased's parents had contended that deceased was an unmarried minor and, on that assumption, had retained a lawyer to recover damages for deceased's alleged wrongful death. The attorneys for instant plaintiff took the deposition of the parents' lawyer and asked him to state the names and addresses of eyewitnesses which had admittedly been given to him by the father of deceased. Defendant made no objection to the question. The lawyer-witness refused to disclose the names (even though he conceded that he had been present when the deposition of his client was taken wherein the client disclosed the one name he remembered among those handed to the lawyer-witness) on the ground that the information was a part of a confidential communication between client and lawyer. Thereafter, plaintiff filed a motion in this case for an order requiring the lawyer-witness to answer the question which the trial court overruled without prejudice. Thereafter, plaintiff refiled the motion and it was again overruled. The lawyer-witness at the deposition was not a witness at the instant trial. The record does not disclose that defendant had anything to do with the controversy between plaintiff and the deposition witness, or that defendant attempted in any way to hamper plaintiff's efforts to obtain the names of eyewitnesses.
*17 The parties have briefed this matter as though the sole question involved is whether there was a waiver of a lawyer-client privilege. We find it unnecessary, however, to rule whether the names of witnesses conveyed to a lawyer by his client are within the privilege of that relationship; or whether, if so, there was here a waiver of the privilege by reason of the client's answer at a prior deposition in which he named the one eyewitness whose name he remembered. And we shall assume, without deciding, the doubtful proposition that plaintiff's motion for an order on the lawyer-witness to answer the deposition question was an authorized motion; and we shall thus further assume that plaintiff may on this appeal, properly assign as error the action of the trial court in overruling her motion, even though she has failed to pursue the remedy provided in Section 492.270 RSMo 1949, V.A.M.S., and to have thereby disposed of the independent controversy between herself and the deposition witness prior to trial.
In any event, making the foregoing assumptions solely for the purposes of this case, we are of the opinion that plaintiff was not prejudiced by the action of the trial court. This, for the reason that plaintiff was not entitled on deposition to obtain the names of witnesses to a casualty where it was evident that the deposition witness's knowledge as to whether such persons did witness the casualty was based upon hearsay. The question asked clearly sought the disclosure of hearsay information. Our conclusion in this respect is compelled by our consistent rulings in connection with discovery by interrogatories. Section 510.020 RSMo 1949, V.A.M.S.
In State ex rel. Williams v. Buzard, 354 Mo. 719, 190 S.W.2d 907, we held that the scope of examination on interrogatories under Section 510.020, supra, was coextensive with that permitted on depositions; that an interrogatory calling on a corporation defendant to state the names and addresses of persons whose names and addresses were taken by any of the corporation's employees at the scene of a casualty was too broad because it went "beyond what the operator [defendant's employee] actually immediately found out himself then and there about who were on the car at the time and place of the casualty; and calls for those whom any employee of defendant may have found there later or identified with it by hearsay only." 190 S.W.2d 910. We there also held that because it would be proper at the taking of a deposition to ask defendant's streetcar operator for the names of those he knew were present at the casualty by being found by him there on the car at that very time, it was likewise proper to require the defendant company to disclose the same information by answers to interrogatories. In State ex rel. Kansas City Public Service Co. v. Cowan, 356 Mo. 674, 203 S.W.2d 407, we again held that an interrogatory sought information to which the inquirer was not entitled, where such interrogatory called for the names of witnesses obtained by defendant's employees who might not have been present at the casualty, from persons whose presence at the scene would have been known to such employees only by hearsay. Again, in State ex rel. Miller's Mutual Fire Ins. Ass'n v. Caruthers, 360 Mo. 8, 226 S.W.2d 711, we held that defendant properly refused to answer an interrogatory which called for the names of persons whose connection with the case and knowledge of facts pertaining to the casualty could only have become known to the defendant by hearsay. See also: State ex rel. Uregas Service Co., Inc., v. Adams, Mo., 262 S.W.2d 9.
It seems clear from the foregoing cases, that the names of witnesses to an accident which are in the possession of one of the parties to a suit may not be obtained by the other party either by interrogatories or by deposition, except in so far as the party called upon to produce or state the names has personal knowledge that the named persons were witnesses to, or were present at the scene of, and at the time of the casualty. It must follow that, the names of purported eyewitnesses to an accident may not be obtained by a party (to a suit involving that accident) from a third person, where the third person's knowledge as to whether the named witnesses were in fact *18 witnesses to the casualty is based upon hearsay. Upon the instant record, the deposition-lawyer-witness had no personal knowledge that the persons whose names were in his possession were persons who had witnessed the accident in question, and his information in that respect was based upon hearsay. Thus, plaintiff could not properly insist on an answer to the deposition question asked, and consequently no prejudice resulted to her by reason of the trial court's action in overruling her motion.
Reversed and remanded.
VAN OSDOL and LOZIER, CC., concur.
PER CURIAM.
The foregoing opinion by COIL, C., is adopted as the opinion of the court.
All concur.